

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE CROTTY**

-------------------------------------------------------------

**05 CV 8064**

Aror Ark O'Diah,

      Plaintiff (s),  :

            :

    -against-      :

            :

            :

The Port Authority of New York and New Jersey, :
Port Authority Police Officer George Juez,  :
Port Authority Police Officer Jorge Espinoza, :
Port Authority Police Officer Laurent Ponsolle, :
Port Authority Police Detective Dalton,  :
Port Authority Police Officer Festa, Shield#1534, :
Port Authority Police Officer Morris, Shield#1502, :
New York State,       :
New York Airport Bus Service,    :
Nassau County Police Officer Anthony Zurick, :
Nassau County Attorney,     :
Anthony Georgeson,      :
Honorable Randall Eng,     :
Queens County District Attorney,   :
Assistant District Attorney Michael Whitney, :
Brian Coggeshall,      :
JFK International Air Terminal LLC,   :
Hertz Corporation,      :
Usman Pasha,       :
Beckman Coulter,      :
LT Wheels,       :
New York City Department of Correction, and :
Martin Horn, Commissioner,    :
Meir Moza, Esq.,      :
Robert Sokolski, Esq.,     :
Stephen Bilkis, Esq.,     :
Frank Galchus, Esq.,     :
Davino's Auto Body, Inc.,     :
        Defendants. :

-------------------------------------------------------------x

Case No. _____

Claims: $50,000000.00 in
Equitable Reliefs, or, The
alternative

USCA Constitution
Amendment 14 Sect. 1
Violated, Based Upon The
Identification of Plaintiff's
National Origin, motivated
By Racial Stereotype, and
A Joint Racially motivated
harassment and attempted
murder in disguise under
color of State laws in a
systematic violations of
42 U.S.C. Sections 1983.
Breach of fiduciary duty,
gross reckless disregards,
and intentional negligent in
bad faith. Professional
irresponsibility, extortion
and intimidation in disguise

**TRIAL BY JURY**
**DEMANDED**

**1a.**  **COVER-SHEET**

1

**1b    TABLE OF CONTENT**

| # OF CONTENTS: | DESCRIPTION OF CONTENTS: | # OF PAGES |
|---|---|---|
| 1a. | Cover-Sheet............................................................................1 | |
| 1b. | Table of Content...................................................................2a | |
| I. | Jurisdictional Statements.......................................................2-5 | |
| II. | Count I :Joint racially motivated harassment, et al..................6-25 | |
| III. | Count II: Racially motivated wrongful arrest, et al.................26-38 | |
| IV. | Counts III: Joint racially motivated unconstitutional Acts,et al39-43 | |
| V. | Trial by Jury Demanded..........................................................43 | |
| VI. | Reliefs Sought.......................................................................43 | |
| VII. | Conclusion.............................................................................43 | |

**SUPPLEMENTAL AUTHORITIES**

| # OF AUTHORITIES: | DESCRIPTION OF AUTHORITIES: | # OF PAGES |
|---|---|---|
| 1a | Sunday, July 10, 2005,  Daily News....................................1 | |
| 1b | Wednesday, July 6, 2005, Daily News..................................1 | |

## I.    JURISDICTIONAL STATEMENTS

1.    This action is brought pursuant to USCA Constitution Amendment 14 Section 1, for racially motivated deprivation, and denial of equal rights, access, protection, and due process, by New York State, State Departments, State Agents, State Actors, and State Courts, resulting to wrongful arrests, wrongful indictment, malicious prosecution, wrongful conviction procured by prosecutorial misconducts tantamount to fraud, wrongful sentence induced by racially motivated stereotype and based upon the identification of plaintiff national origin, wrongful imprisonment, mental and physical cruelty while in State confinement, including the following damages: personal properties (motor Vehicle), inflictions of bodily harm, emotional distress, attempted murder, and made a victim of racially motivated  harassment in disguise under color of State laws based upon the identification of plaintiff's national origin induced by racial stereotype. Jurisdiction is specifically conferred on this Court by USCA Constitution Amendment 14 Section 1, and 42 U.S.C. Sec.1983. Equitable and other relief are also sought under 42 U.S.C. Jurisdiction is also based on 28 U.S.C. Sec 1331, 1343. Defendants misconducts also tantamount to Racially motivated Breach of fiduciary duty, gross reckless disregard, and intentional negligent in bad faith, and Racially motivated Professional irresponsibility, extortion and intimidation in disguise. Also Based upon the newly discovered evidence, plaintiff is obliged to believes, and assert that the misconduct of the defendants in this case is a mirror images of the racial injustices promoted and practiced against the People of Africa Origin following the end of Slavery in 1865, where State and Federal Judges share the believes that People of Africa Origin are pieces of properties, as a results, the Courts Systems continue to treat People of Africa Origin as properties, that  has no rights. Because of  the injustices inflicted on the People of Africa

Origin following the end of slavery in 1865, hence USCA Constitution Amendment 14 section 1, was passed into law to protect the rights of oppressed people. In this instant case, corrupt and racist State Officials which includes State and federal Judges named and unnamed as defendants in this case, have acted in unconstitutional misconduct in bad faith in reckless disregard in disguise under color of state laws to intimidate the plaintiff, and caused the plaintiff personal bodily harm by their misuse of the Port Authority Police and Nassau County Police. Plaintiff believes that *Judge Randall Eng* is a by-product of the *Nazi mentality*, used by the racist mind in the State of New York to oppress and destroy any persons of Africa Origin who attempt to develop their own business establishments.

2.     Plaintiff is a citizen of the United States of America, 47 years old male, married with seventeen adult children, resides and conduct business in Tourism and Hospitality at the below address:

**Plaintiff's Names :**

Aror Ark O'Diah

**Plaintiff's Address :**

Timespeed Consulting-TAPSI.
177-16 South Conduit Avenue #1H
Jamaica, Queens, NY 11434
(718) 978-9580 or (516) 361-0045.

3.     The above named Defendants are sued severally, separately, and jointly in their individual and Official capacities. Plaintiffs beliefs that the defendants named in this instant case acted in unconstitutional misconducts by promoting the evil practices of racial hatred prohibited by the United States Constitution and Laws pursuant to USCA Constitution Amendment 14 Section 1, based upon the identification of the plaintiff national origin  and causing the plaintiff emotional, and physical harms and damages . **See exhibit #1a and #1b, attached as authorities in support of the plaintiff rights to sue The Defendants whose names and addresses appear below:**                                    3

**Defendants Names :**                                    **Defendants Addresses :**

The Port  Authority of New York and New Jersey,
Port Authority Police Officer George Juez,
Port Authority Police Officer Jorge Espinoza,
Port Authority Police Officer Laurent Ponsolle,
Port Authority Police Detective Dalton,
Port Authority Police Officer Festa, Shield#1534        PA Legal Department
Port Authority Police Officer Morris, Shield#1502       225 Park Avenue
                                                        New York, New York.

New York State                                          New York State Office of the
                                                        Attorney General
                                                        120 Broadway
                                                        New York, New York 10271.

New York Airport Bus Service                            Legal Department
                                                        Building #15
                                                        Second Avenue
                                                        Brooklyn, NY 11215.

Nassau County Police Officer Anthony Zurick             Nassau County Police Head Quarter
                                                        1490 Franklin Avenue
                                                        Mineola, NY 11501.

Nassau County Attorney                                  Nassau County Attorney Office
                                                        One West Street,
                                                        Mineola, NY 11501.

Anthony Georgeson                                       72 Lenox Avenue
                                                        Hicksville, NY 11801.

Honorable Randall Eng                                   Queens County Supreme Court
                                                        Part TAP B 3rd Floor
                                                        125-01 Queens Boulevard
                                                        Kew Garden, NY 11415.

Queens County District Attorney,
Assistant District Attorney Michael Whitney             Queens County District Attorney
                                                        Office.  Queens County Courthouse
                                                        125-01 Queens Boulevard
                                                        Kew Gardens, NY 11415.

Davino's Auto Body, Inc.                                1812 Atlantic Ave, Brooklyn
                                                        NY 11233

4

Brian Coggeshall,
JFK International Air Terminal LLC.

Terminal 4, Room 161.022
JFK International Airport
Jamaica, NY 11430.

Hertz Corporation

Hertz Rent A Car
900 Doremus Avenue
Port Newark, NJ 07114.

Usman Pasha

798 E. Carl Avenue
Baldwin, NY 11510.

Beckman Coulter Inc.,
LT Wheels

666 Garland PL
Des Plaines, IL 60016.

New York City Department of Correction,
and Martin Horn, Commissioner

Legal Division
60 Hudson Street, 6th Floor
New York, New York 10013.

Frank Galchus, Esq.

Frank Galchus, Esq.
38-50 Bell Boulevard
Bayside, NY 11361.

Meir Moza, Esq.

Law Office of Meir Moza
217 Willis Avenue
Suite 101
Mineola, NY 11501.

Stephen Bilkis, Esq.

Stephen Bilkis & Associates
805 Smith Street
Baldwin, NY 11510

Robert Sokolski, Esq.

Sokolski & Zekaria, P.C.
305 Broadway-Suite 402
New York, NY 10007.

4.    Plaintiff request that he be granted permission to sue the Defendants severally,

Separately, and jointly or in the alternative, pursuant to U.S.C.A. Title 28 Rules 18(a)(b),

19(a)(b),  and 20(a)(b), of the Federal Rules of Civil Procedures.

5.

**II.   COUNT I:   JOINT RACIALLY MOTIVATED HARASSMENT, STEREOTYPING, PUNISHMENT FOR EXERCISING RIGHTS PROTECTED BY THE UNITED STATES CONSTITUTION AND LAWS, AND ATTEMPTED MURDER IN DISGUISE UNDER COLOR OF STATE LAWS IN A SYSTEMATIC VIOLATIONS OF USCA CONSTITUTION AMENDMENT 14 SECTION 1, AND 42 U.S.C. SECTION 1983, BASED UPON THE IDENTIFICATION OF PLAINTIFF NATIONAL ORIGIN AND $30,000000.00 CLAIMS OR IN THE ALTERNATIVE EQUITABLE RELIEFS AGAINST THE DEFENDANTS, PORT AUTHORITY OF NEW YORK AND NEW JERSEY, PORT AUTHORITY POLICE OFFICERS GEORGE JUEZ, JORGE ESPINOZA, LAURENT PONSOLLE,FESTA, MORRIS, DECTIVE DALTON, NEW YORK STATE, NEW YORK AIRPORT BUS SERVICES, NASSAU COUNTY POLICE OFFICER ANTHONY ZURICK, NASSAU COUNTY ATTORNEY, ANTHONY GEORGESON, HONORABLE RANDALL ENG, QUEENS COUNTY DISTRICT ATTORNEY, ASSISTANT DISTRICT ATTORNEY MICHAEL WHITNEY, BRIAN COGGESHALL, JFK INTERNATIONAL AIR TERMINAL LLC, NEW YORK CITY DEPARTMENT OF CORRECTION, AND COMMISSIONER MARTIN HORN, DAVINOS AUTO BODY,INC.,AND PLAINTIFF STATES THE FOLLOWING:**

5.      Plaintiff AROR ARK O'DIAH, incorporates all the relevant factual statement on paragraphs numbered-One on pages numbered-One through paragraphs numbered-Four on pages numbered-five and thereafter into this paragraphs numbered-five as if pleaded here.

6.      On January 11, 2001, plaintiff was a victim of robbery attacks in Garden City, in Nassau County, and due to multiple falls while in pursues of the robbers, plaintiff suffered head, neck, back, right shoulder, right knee, and right ankle injuries, resulting to periodic recurring dizziness and severe headache until this present date.

7.      Plaintiff filed complaint at the Garden City Police Department, and due to the good work of the Garden City Police Officers and Detectives, five or six of the Robbers were captured, arrested, detained and charged.

8.      On January 11, 2001, the Garden City Police Department Detective advised the

6

plaintiff to file for Crime Victim Claims at the New York State Crime Victim Board located in

Nassau County due to the Injuries suffered by the plaintiff on January 11, 2001, robbery attacks,

and the plaintiff complied. As soon the plaintiff filed claims at the New York State Crime Victim

Board at Nassau County, plaintiff become a victim of systematic harassment following the

disclosure and identification of the plaintiff national origin-NIGERIA.

        9.      On about January 11, 2001, or thereafter, plaintiff was told to first file for

Worker Compensation at the Hempstead Division in Nassau County New York State Workers

Compensation Board before seeking claims through the New York State Crime Victim Board,

and the Plaintiff complied but upon the identification of the Plaintiff national origin-NIGERIA,

the Nassau County New York State Workers Compensation Board refused to process the

plaintiff claims. And plaintiff medical bill, loss wages, and pain and suffer compensation remained

unpaid. Plaintiff beliefs that he was denied rights to benefits because of his national origin.

        10.     Plaintiff contacted the Garden City Police Department seeking for the disclosure of

the names of the robbers who caused the plaintiff injuries on January 11, 2005, but the Garden

City Police Department advised the plaintiff to collect the information about the robbers from the

Nassau County Attorney, and the plaintiff contacted the Nassau County Attorney. The Nassau

County Attorney refused to talk to the plaintiff, and also refused to prosecute the five or six

robbers based upon the identification of the plaintiff national origin-NIGERIA.

        11.     Due to the injuries, plaintiff could not secure any secular employment, and

remained unemployed until about January 14, 2002, when plaintiff decided to go into private

business of Information and protection in Tourism and Hospitality, with the permit of the New

York State Department of State Division of Corporation, and from the Port Authority of New

York and New Jersey.    Plaintiff was granted permit to operate his private business in the area

of information and protection in Tourism and Hospitality, July 15, 2002 by The Port Authority of

New York and New Jersey, and on September 16, 2002, by the State of New York.

       12.      As soon plaintiff was granted permit to operate his private business, plaintiff

received an eviction notice from his Business Office Landlord in Nassau County.  Plaintiff started

to experience a joints systematic racially motivated verbal and physical attacks from everywhere

he went within Nassau County, more also, at the Bank (BANK OF NEW YORK IN

HICKSVILLE), at the Post Office located at West John Street in Hicksville in Nassau County, at

School, Colleges, Universities and at the Library in Nassau County.  Plaintiff initiated an

independent private investigation, only to discovered that plaintiff harassment were under the

direction of the Nassau County Attorney Office in a concealed attempt to force the plaintiff to

move out of Nassau County in a disguise attempt to deny and deprive the plaintiff rights to seek

for the disclosure of the names of the Robbers who injured the plaintiff on January 11, 2001, and

from pursuing benefit from the Nassau County Division of the New York State Crime Victim

Board.  Plaintiff beliefs that he has been denied and deprived equal rights and access to use the

Public and Private Institutions of learning and financial houses located at Nassau County solely

because he exercise his rights to petition for benefits at the Nassau County Division of the New

York State Crime Victim Board following the Robbery attacks and injuries of January 11, 2001.

Plaintiff mails started to arrived opened by the Hicksville Post Office and when the plaintiff

complain to the Post Office, plaintiff become a victim of verbal abuse and told to go back to

Africa he belong.

13.    Plaintiff was unable to move freely in Nassau County due to harassment caused by

the Nassau County Police who issue the plaintiff falsified traffic tickets every time, and any time

without just cause which forced the plaintiff to move out Nassau County.

14.    On January 09, 2004, plaintiff Motor Vehicle was damaged by Defendants

Anthony Georgeson, at the intersection of North Broadway and East Johns Street, in Hicksville

in Nassau County while the plaintiff stopped for traffic Red light, and Mr. Georgeson was

attempting to pass the plaintiff on the right side.   Plaintiff and Mr. Georgeson called the Nassau

County Police but for a while the police did not show-up.  Plaintiff and Mr. Georgeson decided

to initiate settlement, as Mr. Georgeson offered to pay the sum of $150.00 to plaintiff for the

plaintiff Vehicle front Bumper damaged by Mr. Georgeson.  Plaintiff told Georgeson that he did

not know  the accurate cost of a new bumper, and offer to seek cost from the nearby Auto Body

Shop, and Mr. Georgeson agreed.  Plaintiff left his Adult son with Mr. Georgeson at the accident

scene, and went to get accurate estimate of the Bumper from a nearby Auto Body Shop.  In

about 10 to 20 minutes later, the plaintiff return to the accident scene only to see Mr. Georgeson

driving way from the accident scene.  Plaintiff drove in pursues of Mr. Georgeson but could not.

 Plaintiff contacted the Nassau County Police to report that no police show-up

at the accident scene, and that Mr. Anthony George had fled from the accident scene.  The

Nassau County Police instructed the plaintiff to wait at that instant location that she was

dispatching another Police Officer, and the Plaintiff waited.  Nassau County Police Officer

Anthony Zurick show-up, and asked the plaintiff if the plaintiff wrote the plate number of

9

Mr. Georgeson car, and the plaintiff said yes, and handed the plate number to Officer Anthony

Zurick. Officer Anthony Zurick went back to his Police Vehicle, only to return to the plaintiff

with the news that Mr. Anthony Georgeson address is within the area, and told the plaintiff to

drive follow him. Plaintiff asked Police Officer Zurick if it was safe to follow him to Mr.

Georgeson home address, and the Officer replied that it was okay. Upon getting to Mr.

Georgeson home address, Officer Anthony Zurick instructed the plaintiff to remained inside his

Motor Vehicle properly parked in front of Mr. Anthony Georgeson home address, and the

Officer went into Mr. Anthony Georgeson home. In about 20 to 40 minutes later, another

Nassau County Police Officer also appeared at Mr. Anthony Georgeson address, and went inside

Mr. Anthony Georgeson home. Both Nassau County Police Officers remained inside Mr.

Anthony Georgeson Home for over three hours, while the plaintiff was waiting inside his Motor

Vehicle parked outside Mr. Georgeson home. After about three hours, both Nassau County

Police Officers, Anthony Zurick, and his Partner came out of Mr. Anthony Georgeson Home,

only to tell the plaintiff to get out of his parked Motor Vehicle, and the plaintiff complied.

Officer Anthony Zurick told the plaintiff that they are placing the plaintiff under arrest for leaving

the accident scene, and told the plaintiff that if the plaintiff cooperate that they will only going to

hold the plaintiff for an hour, and said that is not the end of the world but told the plaintiff that if

the plaintiff did not cooperate that they will file charges against plaintiff. Plaintiff told both

Officers how can they get away with this? Both Officers replied by saying just watch. Plaintiff

Motor Vehicle was left parked on the Street in front of Mr. Anthony Georgeson House, and

Both Nassau County Police Officer handcuffed the plaintiff, placed the plaintiff inside Police

Vehicle, and plaintiff was driven to Nassau County Police Station in Woodbury, in Nassau

10

County. Upon arriving at the Police Station, plaintiff was locked up with metal chain on both

hand. And was released on the next day with a summon to appear at the Nassau County First

District Court.

15.    Plaintiff retained Mr. Meir Moza at the cost of $3,500.00 which includes payment

for speedy trial.

16.    Upon arriving at the Nassau County First District Court, on the Court hearing

date, Police Officer Anthony Zurick did not appear in Court. As the Prosecutor told the

Presiding Judge that Officer Anthony was on a special assignment on that particular date, and ask

for adjournment.

17.    On the next Court date, the Prosecutor told the Judge that Police Officer Anthony

Zurick went on vacation.

18.    On the third Court appearance, the Prosecutor told the Judge that Officer Anthony

Zurick was ill, and will not come to court that day.

19.    On the fourth court hearing Officer Anthony Zurick did not appear, and the

Judge told Mr. Meir Moza to file a dismissal motion if Officer Anthony Zurick did not appear.

20.    On the fourth Court appearance Officer Anthony Zurick did not appear, and Mr.

Meir Moza did not file dismissal motion.

21.    Plaintiff, and his son has been appearing at the First District Court, in Hempstead

Nassau County effective from January 2004, and Police Officer Anthony Zurick refused to appear

in Court, as the Nassau County Attorney continue to tell the Judge that Officer Zurick is still

sick, when in fact, Police Officer Anthony Zurick continue to report at his Police Work healthy

but refused to make himself available to prosecute the charges he falsified. Nassau County

11

Attorney knew that Police Officer Anthony Zurick was never on vacation nor sick, lied to the Court that Officer Zurick was on vacation, and also sick.

22.     Plaintiff beliefs and alleges that Nassau County Attorney is involved in the promotion of the practices of a joint racially motivated harassment in disguise under color of State laws based upon the identification of the plaintiff national in a reckless disregard to the plaintiff rights to pursue happiness, for denying and depriving the plaintiff equal rights and equal access to attend State Courts to testify truthfully. As a results, Nassau County Attorney, and Police Officer Anthony Zurick and Mr. Anthony Georgeson agreed to falsified Police and Insurance claims Reports in disguise attempt to collect insurance claims via fraud, and subjected the plaintiff to malicious prosecution, causing the plaintiff loss time from private businesses, and suffer emotional distress for almost two years. Nassau County Attorney knew or should have knew that Police Officer Anthony Zurick, and Mr. Anthony Georgeson falsified the Police reports, yet Nassau County Attorney continue to used the falsified Police reports to subject the plaintiff to malicious prosecution for the last two years.

23.     Plaintiff informed Mr. Meir Moza, that he have seen Police Officer Anthony Zurick in many occasion at the Police Station look healthy during the period Nassau County Attorney appeared in Court to say that Police Officer Anthony Zurick went on Vacation or sick. Mr. Meir Moza has the legal obligation to investigate Police Officer Anthony Zurick vacation and illness but Mr. Meir Moza did not conduct investigation, even upon the plaintiff request.

24.     Nassau County First District Court presiding Judge told Mr. Meir Moza to file dismissal motion if Police Officer Anthony Zurick failed to appear in Court in more than five difference Court appearance but Mr. Meir Moza intentionally in reckless disregard to the

12

plaintiff, refused to file motion to dismiss the false charges filed against the plaintiff by Officer Anthony Zurick.

25.    Plaintiff beliefs that Mr. Meir Moza does not have his legal interest hence the Nassau County Attorney was able to deny and deprived the plaintiff equal access to attend the State Court to testify truthfully.  As such, plaintiff demand the refund of the $4,000.00 paid to Mr. Meir Moza to defend plaintiff against the falsified charges filed by Anthony Zurick.  Plaintiff beliefs that Mr. Meir Moza, and Nassau County Attorney has the power to Subpoena Police Officer Anthony Zurick to attend the Court but they refused to do so, yet plaintiff and his son were both forced to appear in Court for the last two years.  Plaintiff beliefs and alleges that Mr. Meir Moza, and Nassau County Attorney, and Police Officers Anthony Zurick, and Mr. Anthony Georgeson jointly agreed to subject the plaintiff to a joint racially motivated denial and deprivation of equal access to attend State Court to testify truthfully in a joint systematic violations of USCA Constitution Amendment 14 Section 1, due process, equal protection and pursues of happiness clauses in disguise, under color of State laws based upon the identification of the plaintiff national origin-NIGERIA.  PLAINTIFF seek equitable reliefs against Nassau County Attorney, Police Officer Anthony Zurick, and Mr. Meir Moza for racially motivated breach of fiduciary duty, gross negligence, and reckless disregard of the plaintiff rights to attend State Courts to testify truthfully.

26.    On September 19, 2002, at the intersection of 77 th Street and Astoria Boulevard, plaintiff and his Motor Vehicle was reared and plaintiff was injured, Motor Vehicle was damaged by Hertz Corporation Motor Vehicle and Driver.    It costed  plaintiff the amount of the sum of $4,500.00 to repairs his Motor Vehicle damaged by Hertz

13

Corporation Motor Vehicle and drivers. After the repairs, the plaintiff Motor Vehicle

depreciated in value, and no longer suitable for the plaintiff business of Tourism. And as a result

of the injury sustained by the plaintiff caused by the accident on September 19, 2002, plaintiff

could not continue the normal routine of his private business due to severe pains in his neck,

shoulder, back, knee, and wrist and ankle. As plaintiff was nursing his injuries through physical

therapy, he could not maintain his Business monthly payments of the Motor Vehicle damaged by

Hertz Corporation Motor Vehicle.   The plaintiff Motor

Vehicle was repossessed during the period of plaintiff accident related illnesses, and the financial

Institution that financed the plaintiff Motor Vehicle continue to demand the sum of $31,000.00

from the plaintiff, and also reported the $31,000.00 owe to all major credit reporting agencies,

affecting the plaintiff credit rating, causing the plaintiff inability to rent, buy, or do businesses.

 Plaintiff sought compensation from Hertz Corporation, and plaintiff was offered $2,000.00, out

of estimated total losses in the amount of $200,000.00. Plaintiff rejected the offer, and the

plaintiff initiated a federal action, but Hertz Corporation used fraudulent means to procured

dismissal without due process based upon the identification of the plaintiff national origin-

NIGERIA. Plaintiff beliefs, and alleges that he has been denied and deprived equal rights and

equal access to attend both federal and State Courts to testify truthfully based upon the

identification of his national origin. Plaintiff demand full payment of the plaintiff Motor Vehicle

damaged by Hertz Motor Vehicle, and equitable compensation for two years loss wages, pain

and suffering, and emotional distress, or in the alternative.

27.    On November 06, 2002, while plaintiff was still nursing the injuries sustained

caused by Hertz Corporation Motor Vehicle, plaintiff was attacked by six White male who were

14

later identified to be Port Authority of New York and New Jersey Police Officers near the

America Airline arrival terminal parking lot at La Guardia Airport.  As a result of the attacks,

plaintiff prior injuries were aggravated.

28.    On November 06, 2002, plaintiff was attacked and wrongfully arrested by six

White males who later identified themselves as  Port Authority of New York and New Jersey

Police Officers.    Based on the wrongful arrest, plaintiff was later wrongfully indicted on the false

charges of disorderly misconducts, unlawful solicitation for grand transportation, assault of a

Police Officers of a second degree, and resisting arrest.

29.    Plaintiff and his business were granted permit by the State of New York to operate

business of INFORMATION, and PROTECTION in TOURISM AND PERSONAL SERVICES

VIA HOSPITALITY on September 16, 2002.  Also, Plaintiff and his business were granted

access by The Port Authority of New York and New Jersey to operation same business activities

at the JFK International Airport, Laguardia Airport, and Newark Liberty International Airport on

July 15, 2002, upon the plaintiff applications and request for access.

30.    In the period of November 06, 2002, and thereafter, plaintiff retained Frank

Galchus, Esq., Meir Moza, Esq., Stephen Bilkis, Esq., Robert Sokolski, Esq., and Steven

Zalewski, Esq. For the total sum of the amount of $31,400.00, with the understanding for a

speeding trial.  Steven Zalewski, Esq., who eventually end up trying the case end up not provided

the $8,000.00 placed in escrow with Stephen Bilkis, Esq by the plaintiff.  As a result, Steven

Zalewski, Esq., could not have enough funds to provide proper defense for the plaintiff.  Frank

Galchus, Esq.,  collected the amount of $2,500.00, before the plaintiff appeared before Grand

15

Jury. Mr. Frank Galchus said he needed the $2,500.00 to prepare the plaintiff for Grand Jury but

Mr. Frank Galchus, was told by the plaintiff that he was attacked and arrested by six White males

in the parking Lot at Laguardia Airport. But a Black male appeared before Grand Jury to say

that he was assaulted by plaintiff. Mr. Frank Galchus knew that the Black male who alleged that

he was assaulted by the plaintiff was not at the scene of the attacked and arrest but Mr. Frank

Galchus did not raise any objection to the Grand Jury proceeding that later resulted to wrongful

indictment of the plaintiff. Plaintiff fired Mr. Frank Galchus, and demanded for his $2,500.00 but

Mr. Frank Galchus have not refund to plaintiff his $2,500.00. Plaintiff demanded for his

$9,300.00 from Mr. Stephen Bilkis, and Mr. Stephen Bilkis continue to refused to refund to the

plaintiff his $9, 300.00. Plaintiff is making the same demand in this instant complaint.

31.     After almost three years of attending and appearing in Court, on February 28,

2005, plaintiff was tried at the State of New York Supreme Court, in Queens County before

Judge Randall Eng.

32.     During the trial, Judge Randall Eng caught Queens County Assistant District

Attorney Michael Whitney several times encouraging The People Witness to lie, as one of the

Witness The People flew from Florida was unable to identified the plaintiff as his Driver who

solicited for Grand Transportation on November 6, 2002. Also, The People Witness, Mr. Perry

Magee testified that there were no Black Port Authority Police at the arrest scene by confirming

that there were all White Port Authority Police. Port Authority Police Officer George Juez who

claimed that he was assaulted by the plaintiff is a Black male, and he was not at the arrest scene

on November 6, 2002, and he has no person to person contact with the plaintiff before November

6, 2002, nor on November 06, 2002. In a open Court during the trial of the plaintiff at the State

16

of New York Supreme Court, in Queens County, Judge Randall Eng asserted that he would have

consider mistrial application if the plaintiff trial was before Jury based upon the facts that the

Prosecutor Michael Whitney made several attempt to procure conviction of the plaintiff via

prosecutorial misconduct which tantamount to fraud for encouraging The People

Witnesses to lie while on the Witness stand.

33.    On February 05, 2005, about three weeks before the plaintiff trial at the State of

New York Supreme Court, in Queens County, Kew Gardens in Queens, plaintiff was a victim of

robbery attacks, and due to several blow and punch on the plaintiff head, plaintiff suffered severe

injuries, resulting to periodic recurring memory loss and dizziness. Plaintiff could not bite solid

food, eat, or talk due to the injuries incurred on February 05, 2005, caused by robbers. Due to

plaintiff disability, plaintiff could not testify on his behalf during his trial. And plaintiff Counsel

Mr. Steven Zalewski, forgot to tell Judge Randall Eng about plaintiff disability, preventing him

from testifying, and also failed to request for trial adjournment to enable the plaintiff to recover

because plaintiff intend to testify on his behalf. Plaintiff filed for claim before New York State

Crime Victim Board to help pay for his medical bills but the New York State Crime Victim

Board delayed the processing of the plaintiff claims based upon the identification of the plaintiff

national origin-NIGERIA.

34.    On March 03, 2005, Disorderly misconducts, and Unlawful solicitation for grand

transportation charges filed against the plaintiff were dismissed. The Port Authority Police

asserted that the reason plaintiff was arrested was because they believes that plaintiff was

involved in unlawful solicitation for grand transportation, and disorderly misconduct. Plaintiff is

legally authorized to operation business in the State of New York on September 16, 2002.

17

Plaintiff has been granted access to conduct Business of Information and Protection in Tourism and Hospitality in the area of personal services by the Port Authority of New York and New Jersey on July 15, 2002. Plaintiff was attempting to show these permits to the Six White males Port Authority of New York and New Jersey Police on November 06, 2002, when the Police jumped on the plaintiff and knocked the plaintiff down, and injured the plaintiff.

35.     On March 03, 2005, plaintiff was convicted by Judge Randall Eng on two charges, second degree assault, and resisting arrest. And set date for sentencing of the plaintiff.

36.     On March 03, 2005, plaintiff released Mr. Steven Zalewski from being his defense Counsel for failing to tell Judge Randall Eng about plaintiff disability preventing him from testifying on his behalf during his trial.

37.     On March 03, 2005, plaintiff contacted Mr. Meir Moza, AND told him what has happened in the Court. Mr. Meir Moza encouraged the plaintiff to obtain or order the trial transcript for the purpose of filing CPL 440.10 motion. Immediately following the end of plaintiff conversation with Mr. Meir Moza, on March 03, 2005, plaintiff contacted the Court Reporter and ordered the trial transcripts. And plaintiff contacted Mr. Meir Moza, that he have ordered the trial transcripts. Mr. Meir Moza told the plaintiff that he and his Associates, Mr. Robert Sokolski, jointly will like to file CPL 440.10 on the behalf of the plaintiff at the State of New York Supreme Court to vacate the conviction but it will cost the plaintiff $13,000.00 as $2,000.00 from the $13,000.00 will be used for sentencing appearance, while $11,000.00 will be used to file CPL 440.10 motion. Plaintiff demanded to meet with Mr. Meir Moza, and Mr. Robert Sokolski in person at Mr. Meir Moza Office to sign agreement, after learning from the

18

experience of paying Mr. Stephen Bilkis $9,300.00 with only promises without Mr. Stephen

Bilkis performing legal services.    In about April 20, 2005, or thereafter, Mr. Meir Moza, and Mr.

Robert Sokolski met at Mr. Meir Moza Office in Mineola, in Nassau County, and plaintiff was

told that unless plaintiff pay half of the money which is $6,500.00 that the CPL 440.10 motion

will not be filed.   On June 20, 2005, or thereafter, plaintiff and Mr. Meir Moza, appeared before

Judge Randall Eng, and Mr. Meir Moza requested for more time to file CPL 440.10 motion but

Judge Randall Eng told Mr. Meir Moza to file CPL 330.30 before filing CPL 440.10 motion.

Plaintiff told Mr. Meir Moza, and Mr. Robert Sokolski that he hired them to file CPL 440.10 but

not CPL 330.30, and both agreed, and told the plaintiff that plaintiff will not be charge for filing

CPL 330.30 motion on the assertion that they were only going to file CPL 330.30 motion just to

please Judge Randall Eng.    That if Judge Randall Eng denied the CPL 330.30 motion, then they

will file CPL 440.10.

38.    On about June 20, 2005, or thereafter, Judge Randall Eng, in a open Court

said that he did not believe that the plaintiff intentionally injured anybody on November 06, 2002,

after acknowledging that plaintiff was still nursing injuries from September 19, 2002, Motor

Vehicle accident, and jumping on the plaintiff on attempting to arrest the plaintiff could aggravate

the pains from prior injuries causing the plaintiff to react to the pains but not actually resisting

arrest nor assaulting a Police Officer.    Anyway, Mr. Meir Moza was given two weeks effective

from June 7, 2005, to file CPL 330.30 motion.    WHILE the Prosecutor was also given two week

to response to the CPL 330.30 motion.    Plaintiff paid Mr. Meir Moza and Mr. Robert Sokolski

the total sum of the amount of $11,900.00 OUT OF THE $13,000.00 demanded for filing CPL

440.10 motion.    The due to date to file the CPL 330.30 motion at the State of New York

19

Supreme Court was June 21, 2005. On June 16, 2005, Mr. Robert Sokolski contacted the

plaintiff, and told the plaintiff to come to his Office located on 305 Broad Street, in Manhattan by

4:00 P.M., and on the way to Mr. Robert Sokolski Office on June 16, 2005, plaintiff car was

reared in Auto Collision by Mr. Usman Pasha, damaging the plaintiff Vehicle rear bumper. Mr.

Usman Pasha Vehicle is registered in the Name of LT Wheel but insured by Beckman

Coulter,Inc. Plaintiff contacted Mr. Robert Sokolski about the accident but Mr. Robert Sokolski

told the plaintiff to call him as soon he is done with the accident. In about an hour later, New

York City Police arrived at the accident scene, and at about 5:30 P.M. plaintiff was done with the

accident report and contacted Mr. Robert Sokolski, who encouraged the plaintiff to phone him

when the plaintiff reach Brooklyn Bridge. When the plaintiff approach the Brooklyn Bridge, he

contacted Mr. Robert Sokolski via phone and plaintiff was told that Robert Sokolski had left for

the day on June 16, 2005. Plaintiff was told to come to Mr. Robert Sokolski Office on June 19,

2005, to sign an affidavit due to be file with the CPL 330.30 on June 21, 2005. On June 19,

2005, plaintiff signed the affidavit in support of the CPL 330.30 motion. MR. ROBERT

SOKOLSKI, told the plaintiff on June 19, 2005, that the CPL 330.30 will be filed by Mr. Moza

on June 20, 2005, before the due filing date.

      39.    On June 20, 2005, plaintiff contacted Mr. Meir Moza, and told Mr. Meir Moza to

contact Judge Randall Eng if he think that the time given to submit and file CPL 330.30 was not

enough, but Mr. Moza told the plaintiff not to worry, and said that he and Mr. Robert Sokolski

will take care of the filing on June 20, 2005.

      40.    On June 27, 2005, plaintiff received a phone call from Mr. Robert Sokolski, and

said that Mr. Meir Moza told him to call the plaintiff to come to Mr. Robert Sokolski home in

Woodbury, in Nassau County to pickup the CPL 330.30 motion, and file it at the Court. Plaintiff reminded Mr. Robert Sokolski about what he said about the motion on June 19, 2005, and how come it become the duty of the plaintiff to submit and file the CPL 330.30, that has been due since June 21, 2005. Plaintiff immediately realized that both Mr. Meir Moza and Mr. Robert Sokolski must be up to something. Plaintiff, though very ill, drove to Mr. Robert Sokolski home in Woodbury at about 3:00 P.M. on June 27, 2005. Before plaintiff could drive to Mr. Robert Sokolski home, the Court was already close for the day. Upon arriving at Mr. Robert Sokolski home, Mr. Robert Sokolski was not home but his wife delivered the CPL 330.30 motion to the plaintiff.

41.    On June 28, 2005, plaintiff filed the CPL 330.30 motion. On July 07, 2005, plaintiff and Mr. Meir Moza appeared before Judge Randall Eng as scheduled. Judge Randall Eng asked Mr. Meir Moza, if he has any explanation to do before the Court. And Mr. Meir Moza told Judge Randall Eng, that he has not received any response from the Assistant District Attorney, Michael Whitney. At this junction, Judge Randall Eng was bitterly angry, and asked Mr. Meir Moza why did he failed to comply to his Order directing that CPL 330.30 motion be filed before or on June 21, 2005, and Mr. Meir Moza in reply claimed to take the responsibility for not filing the CPL 330.30 motion on time. Then Judge Randall Eng told Mr. Meir Moza that Assistant District Attorney, Michael Whitney do not have to give a response to the CPL 330.30 motion because it was not timely filed. Judge Randall Eng asked Mr. Meir Moza if he was ready for sentencing statements but Mr. Meir Moza told the Judge that he did not prepare for sentencing statement on July 07, 2005. Judge Randall Eng told Mr. Meir Moza that he was ready to put finality to the case as a result, he was sentencing the plaintiff to confinement. But at this

21

point Mr. Moza told Judge Randall Eng what the Judge had said about the plaintiff innocent of intentional acts and asked Judge Randall Eng why is he sentencing the plaintiff to confinement upon the fact that Judge Randall Eng had stated in a open Court that he did not believe that the plaintiff intentionally injured anybody.  Also the Judge had said that the prosecutor have been involved in a prosecutorial misconducts of attempting to procure conviction through fraud. Anyway innocent man was sent to jail, even though, the Judge Randall Eng believes that plaintiff is innocent.

42.     Plaintiff beliefs that he was wrongfully arrested, injured, indicted, maliciously prosecuted, made a victim of prosecutorial misconduct tantamount to fraud, wrongfully convicted and sentenced based upon the identification of his national origin-NIGERIA.  Plaintiff believes that his arrest, indictment, trial, and sentencing were racially motivated.  Plaintiff believes that the accident of June 16, 2005, caused by Mr. Usman Pasha negligent operation of LT Wheel and Beckman Coulter Vehicle contributed to the plaintiff imprisonment on July 07, 2005.

43.     On July 07, 2005, plaintiff demanded that Mr. Meir Moza, and Mr. Robert Sokolski should prepare the CPL 440.10 motion which the plaintiff had already paid both the fee because the CPL 330.30 was rejected by Judge Randall Eng since it was untimely filed.  Mr. Meir Moza and Mr. Robert Sokolski have agreed to file CPL 440.10 if CPL 330.30 was denied.  Mr. Meir Moza, and Mr. Robert Sokolski have not filed the CPL 440.10 motion.  Plaintiff filed the CPL 440.10 motion upon his released from Confinement.  Plaintiff believes that Mr. Meir Moza and Mr. Robert Sokolski are in breach of fiduciary duty owe to plaintiff, and in gross negligent in reckless disregard to the plaintiff after they have collected the fee for CPL 440.10 and failed to file CPL 330.30 and CPL 440.10.  Plaintiff herein demand that Mr. Meir Moza and Mr. Robert

22

Sokolski refund to the plaintiff the total amount of $40,000.00 they extorted from the plaintiff

Plaintiff believes that due to the contributory negligent of Mr. Usman Pasha, resulting to Motor

Vehicle accident on June 16, 2005, cost the plaintiff the sum of $14,000.00 loss, and creating the

situation where Judge Randall Eng became angry, leading to the prejudgment and imprisonment

of the plaintiff. Plaintiff believes that the Motor Vehicle driven by Usman Pasha was registered in

the name of LT Wheel but insured by Beckman Coulter,Inc., as a result, plaintiff beliefs that he

entitled to some form of compensation that is fair and just against these defendants jointly, or in

the alternative.

  44.  On July 07, 2005, plaintiff was sent on confinement at the New York City

Correctional facility. Upon arriving at the correctional facility, plaintiff was placed in a room

temperature over 105 degree for over eleven hours. Plaintiff almost suffer stroke because of the

amount of sweat rushing out of the plaintiff body. When the plaintiff complaint about the

disparity treatment, a correctional Officer told the plaintiff that African has no say in the facility.

Plaintiff complaint about severe headache, and after eleven hours, plaintiff was transfer to another

room consisting of male prostitutes where one stick of cigarette was sold for $10.0, and a packet

of cigarette were sold for $200.00. Plaintiff is not a smoker, and plaintiff have never tasted

cigarette in his 47 years old life, but on July 07, 2005, while in confinement, plaintiff was exposed

to second hand smoking. And for two weeks plaintiff could not sleep due to severe headache,

and second hand smoking inhaling. Plaintiff believes that Commissioner Martin Horn be held

responsible for allowing Correctional Officers from making profit from inmate, and for allowing

illegal drugs and cigarette into inmate and correctional facility. Plaintiff believes that he was

made a victim of emotional, mental and physical cruelty because plaintiff conviction was based on

23

Police assault and resisting arrest hence the Correction Officers were prepared to murder the plaintiff in disguise under color of State laws while in confinement. Plaintiff demand equitable reliefs against Commissioner Martin Horn, and The New York City Correctional Department or in the alternative.

45.    On April 17, 2005, plaintiff was attacked by employee of New York Airport Bus Services, and plaintiff injuries of February 5, 2005, were aggravated, and plaintiff continue to suffer and subjected to periodic recurring dizziness and memory loss, making it difficult for the plaintiff to attend to his private businesses, school, and pursues of his medical career. Plaintiff reported the incident to The Port Authority Police who refused to investigate in the assertion that plaintiff is a hustler. Based on these slanderous claims, Mr. Brian Coggeshall, Operation Manager of JFK International Air Terminal LCC, in Terminal #4, in JFK International Airport have instructed all his Co-employees to harass the plaintiff, by calling the plaintiff a Terrorist, a hustler, taking the plaintiff picture whenever the plaintiff is in terminal #4, to pick up his business Associates, African Organizational Supporters, and prospective customer in the business of Tourism and Hospitality. Plaintiff access to do Information and Protection in Tourism and Hospitality has been granted by The Port Authority of New York and New Jersey on July 15, 2002. Plaintiff have reported these harassment to The Port Authority of New York and New Jersey but upon the identification of the plaintiff national origin-NIGERIA, hence plaintiff complaint has been recklessly and negligently disregarded. As a result of the claims that plaintiff is a hustler and a terrorist, plaintiff ability to do business, and form Organizational membership have been subjected to irreparable harm. ANYTIME , plaintiff appeared at Terminal #4, to pick up his customers, Mr. Brian Coggeshall of the JFK International Air Terminal LCC, have called

24

the Port Authority Police on the plaintiff. The Port Authority of New York and New Jersey has

the authority to stop the harassment of the plaintiff but have not done so based upon the

identification of the plaintiff national origin-NIGERIA. When The Port Authority of New York

and New Jersey granted the plaintiff access to operation business, the Staff did not know that

plaintiff is a person of Nigeria origin. Now that they know, plaintiff has been subjected to verbal

harassment, and terrible accusation of being called a hustler and a terrorist. Plaintiff filed for

claim before the New York State Crime Victim Board but have systematically delayed providing

the plaintiff assistance to help pay for his medical bills based upon the identification of the

plaintiff national origin-NIGERIA. Plaintiff demand equitable compensation against these

defendants or in the alternative. FURTHERMORE, plaintiff believes and alleges, that it is the

obligation of the Port Authority of New York and New Jersey, or the State of New York to

install working camera in the Parking Lots, and Terminals within their Airports.

Plaintiff also believes and alleges that it is the obligation of the JFK International Air Terminal

LLC, to install working Camera within Terminal number four in JFK International Airport.

Plaintiff believes and alleges that if working Camera were install in all Parking Lots and Terminals

in JFK International Airports, and Laguardia Airport that plaintiffs attackers on November 06,

2002, November 26, 2002, and April 17, 2005, identity would be easy, and plaintiff would not

have been subjected to wrongful arrest, wrongful indictment, wrongful malicious prosecution, and

wrongful imprisonment. Plaintiff believes that The Port Authority of New York and New Jersey,

State of New York, JFK International Air Terminal LLC, and Mr. Brian Coggeshall, are jointly

recklessly and grossly negligent in disregard of the plaintiff safety for failing to install

working Camera in the Airports.

25

### III.    COUNT II:    RACIALLY MOTIVATED WRONGFUL ARREST, WRONGFUL INDICTMENT, MALICIOUS PROSECUTION, WRONGFUL CONVICTION PROCURED VIA PROSECUTORIAL MISCONDUCT TANTAMOUNT TO FRAUD, INEFFECTIVE COUNSEL ASSISTANCE RESULTING TO WRONGFUL SENTENCING, BASED UPON THE IDENTIFICATION OF PLAINTIFF NATIONAL ORIGIN, AND DENIAL OF EQUAL ACCESS TO ATTEND STATE COURT TO TESTIFY TRUTHFULLY IN VIOLATIONS OF USCA CONSTITUTION AMENDMENT 14 SECTION 1, AND 42 U.S.C SECTION 1983, AND PLAINTIFF CLAIMS IN THE AMOUNT OF $10,000000.00 OR IN THE ALTERNATIVE EQUITABLE RELIEFS AGAINST THE FOLLOWING DEFENDANTS, THE STATE OF NEW YORK, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, PORT AUTHORITY OF NEW YORK AND NEW JERSEY POLICE OFFICERS GEORGE JUEZ, JORGE ESPONIZA, LAURENT PONSOLLE, FESTA, MORRIS, DETECTIVE DALTON, NASSAU COUNTY POLICE OFFICER ANTHONY ZURICK, NASSAU COUNTY ATTORNEY, MR. ANTHONY GEORGESON, JUDGE RANDALL ENG, MR. BRIAN COGGESHALL, JFK INTERNATIONAL AIR TERMINAL LLC., MEIR MOZA ESQ., ROBERT SOKOLSKI, ESQ., STEPHEN BILKIS, ESQ., FRANK GALCHUS, ESQ., QUEENS COUNTY DISTRICT ATTORNEY, AND QUEENS COUNTY ASSISTANT DISTRICT ATTORNEY MICHAEL WHITNEY, HERTZ CORPORATION, FOR THE VIOLATIONS OF EQUAL PROTECTION, AND DUE PROCESS AND DENIAL OF EQUAL ACCESS TO ATTEND THE STATE COURT TO TESTIFY TRUTHFULLY CLAUSES PURSUANT TO USCA CONSTITUTION AMENDMENT 14 SECTION 1, AND 42 U.S.C. SECTION 1983, AND PLAINTIFF STATES AS FOLLOWS:

46.    Plaintiff incorporates all the statements of facts in Count #I, into this Count#II, as if it is pleaded in this paragraphs, and the following inclusive.

47.    On January 09, 2004, plaintiff was involved in Motor Vehicle accident, as Mr. Anthony Georgeson was attempting to over-take the plaintiff on the right side while the plaintiff stopped in compliance to traffic red light sign in the intersection of East Johns Street and North Broad Street, in Hicksville, Nassau County, New York.  As a result of the Motor Vehicle accident, plaintiff front bumper was damaged.  Plaintiff and Mr. Anthony Georgeson agree to settle the plaintiff damages but Mr. Anthony Georgeson told the plaintiff that he only has $150.00 cash with him , and said that if the damages fall within $150.00 that he will be willing to settle

26

plaintiff Motor Vehicle damages without the involvement of Police and Insurance, and the

plaintiff agreed. Plaintiff told Mr. Anthony Georgeson that he did not know the actual cost of the

bumper but both plaintiff and Mr. Anthony Georgeson agreed to consult the nearby Auto Body

Shop. Plaintiff left his adult son, ESE AROR O'DIAH, with Mr. Anthony Georgeson at the

accident scene with an instruction to contact the Nassau County Police in compliance to the State

laws, and left to the nearby Auto Body Shop to get actual estimate of the Damages to the

plaintiff Motor Vehicle. I n about ten to 20 minutes, plaintiff got estimate from the nearby Auto

Body but upon return to the accident scene, Plaintiff saw Mr. Anthony Georgeson driving away

from the accident scene, while the plaintiff son was still standing at the accident scene. Plaintiff

drove in pursues of Mr. Anthony Georgeson but was unable to track Mr. Anthony Georgeson.

Plaintiff dial 911, and Nassau County Police Station at Woodbury, in Nassau County responded,

and plaintiff told the Police on the phone that Mr. Anthony Georgeson damaged his Motor

Vehicle, and he had fled from the accident scene. The Nassau County Police 911, told the

plaintiff to describe his location, and told the plaintiff to wait there until the Nassau County

Police Officers Anthony Zurick arrive, and the plaintiff complied. In about 10 to 20 minutes,

Nassau County Police Officers Anthony Zurick arrived at the place the plaintiff was waiting.

Police Officer Anthony Zurick asked the plaintiff if the plaintiff took Mr. Anthony Georgeson

Vehicle Plate, and the plaintiff said he did. Police Officer Anthony Zurick demanded for the Mr.

Anthony Georgeson Vehicle Plate number from the plaintiff, and the Officer left for his Patrol

Vehicle, but upon the Officer return from his Vehicle, he told the plaintiff that Mr. Anthony

Georgeson lived within the area, and instructed the plaintiff to drive follow him to Mr. Anthony

Georgeson Home address. Plaintiff asked the Police Officer if it was safe for him to follow the

27

Officer to Mr. Anthony Georgeson Home, and the Officer assured the plaintiff that it was safe.

Upon arriving at Mr. Anthony Georgeson home address it was about 5:00 P.M., AND Police

Officer instructed the plaintiff to wait inside his Motor Vehicle parked on the Street in front of

Mr. Anthony Georgeson Home address, while Police Officer Zurick went to Mr. Anthony

Georgeson Home.  In about 20 to 30 minute later, another Nassau County Police Officer came to

join Police Officer Zurick at Mr. Anthony Georgeson Home.  Both Nassau County Police

Officers remained in Mr. Anthony Georgeson Home from about 5:00 P.M. to 9:00 P.M. while

the plaintiff was seating in his Motor Vehicle parked on the street, in front of Mr. Anthony

Georgeson Home.  At about 9:00 P.M. Police Officer Anthony Zurick and his Partner came out

of Mr. Anthony Georgeson House, and came to the plaintiff, and instructed the plaintiff to step

out of his Motor Vehicle, and the plaintiff complied.  Police Officer Anthony Zurick told the

plaintiff to place his both hands backward, and the plaintiff asked the Officers about what is going

on but Police Officer Zurick PARTNER told the plaintiff to obey, and said this is not the end of

the World that if the plaintiff complied that plaintiff will be let go in the next hour after arriving at

their Police Station, and that if the plaintiff fail to comply that they will file more charges against

the plaintiff.  Plaintiff placed his both hands backward, and Police Officer Anthony Zurick

handcuffed the plaintiff, placed plaintiff into the Police Patrol Vehicle, and left the plaintiff Motor

Vehicle damaged by Mr. Anthony Georgeson Motor Vehicle on the Street in front of Mr.

Anthony Georgeson Home Address.  Upon arriving at the Nassau County Police Station at

Woodbury in Nassau County, plaintiff was placed inside a Cell, with both hands and leg in

metallic chains from about 9:00 P.M. on January 9, 2004 to about 2:00 A.M. on January 10,2004

Plaintiff was issued a summon to appear at the Nassau County First District Court on the charges

28

that plaintiff left accident scene.

48.    Plaintiff retained Mr. Meir Moza, and later Mr. Stephen Bilkis, and later fired and re-hired **Mr. Meir Moza** in the amount of $5,000.00 jointly. Plaintiff appeared in Court with his Counsel but Police Officer Anthony Zurick did not show-up. From January 9, 2004, and thereafter, plaintiff and his Counsel has been appearing in the First District Court of Nassau County in Hempstead but Police Officer Anthony Zurick and Mr. Anthony Georgeson **never appear in court.** The Presiding Judge instructed Mr. Meir Moza to file a dismissal motion should Police Officer Anthony Zurick and Mr. Anthony Georgeson failed to appear in Court in the next hearing. But Police Officer Anthony Zurick and Mr. Anthony Georgeson continue to refused to appear in Court, and Mr. Meir Moza, continue to fail to file a dismissal motion.

49.    At a point, plaintiff told the Court that he is tired coming to the Court **due to his poor health, and Nassau County Attorney**, promised that he will make sure that Police Officer Anthony Zurick and Mr. Anthony Georgeson show up in Court next time, and the Case was adjourned. At the next hearing, Nassau County Attorney told the Court that Police Officer Anthony Zurick went on vacation but upon the plaintiff independent investigation only to discovered that Police Officer Anthony Zurick was not on vacation because the Officer was reporting for work while the matter came for hearing, and plaintiff communicated this finding to his Counsel Mr. Meir Moza, but Mr. Meir Moza did nothing. On the next Court hearing, Police Officer Anthony Zurick and Mr. Anthony Georgeson failed to appear in Court. But when the plaintiff told his legal Counsel Mr. Meir Moza to do something, then, Nassau County Attorney told the Court that Police Officer Anthony Zurick has been ill. Plaintiff conducted independent investigation only to discover that Police Officer Anthony Zurick was never ill, and he has been

29

going to his job.

50.    Plaintiff beliefs that he has been wrongfully arrested, detained, imprison, and subjected to racially motivated malicious prosecution by Nassau County ATTORNEY in disguise under color of State laws in a joint systematic violations of equal protection, due process and denial and deprivation of equal access to justice. Plaintiff injuries has been aggravated via severe emotional distress in attending Court in the past two years, and plaintiff demand for equitable compensation for being wrongfully arrested, detained, imprison based upon the identification of the plaintiff national origin-NIGERIA. Police Officer Anthony Zurick has been involved in filing false Police reports resulting to the malicious prosecution of the plaintiff.

51.    On September 19, 2002, plaintiff Motor Vehicle and plaintiff were reared by Hertz Corporation Motor Vehicle and Driver in Motor Vehicle collision, resulting to the damages of the plaintiff Motor Vehicle, and the plaintiff sustained bodily injuries. It cost the plaintiff $4,500.00 to repair the plaintiff Motor Vehicle, and because of the injuries sustained, plaintiff was out of private business for almost two years. Plaintiff loss his Motor Vehicle as he was out of business for almost two years following the Motor Vehicle accident of September 19, 2002. Plaintiff filed claims against Hertz Corporation but Hertz Corporation only offer to pay the plaintiff the amount of $2,000.00 toward the repair of the plaintiff Motor Vehicle which the plaintiff reject because plaintiff beliefs that Hertz Corporation was grossly reckless in the operation of the Hertz Corporation Vehicle without valid Driver license, and also plaintiff was and Vehicle were reared. BECAUSE Plaintiff was injured on September 19, 2002, and was unable to perform his private business, plaintiff was unable to continue paying for the installment monthly finance of the Motor

30

Vehicle, as a result the Motor Vehicle was repossessed. The Financial Institution that finance the plaintiff Motor Vehicle is still demanding a balance payment in the amount of $31,000.00 owe. Plaintiff file civil claims against Hertz Corporation but Hertz Corporation procured dismissal tantamount to fraud based upon the identification of the plaintiff national origin, in a joint systematic violations of due process, and equal protection clauses PURSUANT to USCA Constitution Amendment 14 section 1, and deprivation of rights in violations pursuant to 42 U.S.C. section 1983. Plaintiff demand for equitable compensation for wages loss, pain and suffering, and $35,000.00 being full payment for plaintiff Motor Vehicle damaged by Hertz Corporation, or in the alternative reliefs.

52.    On November 06, 2002, plaintiff was physically attacked and his prior injuries were aggravated at the American Airline Parking Lot at Laguardia Airport by six White Males who later identified themselves as The Port Authority of New York and New Jersey Police Officers. Plaintiff was wrongfully arrested, handcuffed, detained and imprison on the wrongful charges of Unlawful solicitation for grand transportation, disorderly misconduct, assault of second degree of a Police Officer, and resisting arrest. Plaintiff has been granted authority or permit by the State of New York to conduct the business of Information and Protection in Tourism and Hospitality via personal services at the plaintiff application. Plaintiff also has been granted access to conduct the business of Information and Protection in Tourism and Hospitality via Personal Services by The Port Authority of New York and New Jersey at the plaintiff application and request prior to the wrongful arrest.

53.    Based on the wrongful arrest on November 06, 2002, plaintiff was wrongfully indicted, and subjected to malicious prosecution, and on about February 28, 2005, or thereafter,

31

plaintiff was tried at the New York State Supreme Court in Queens County. During the trial, the Presiding Judge Randall Eng caught Queens County Assistant District Attorney Michael Whitney attempted to encourage New York State witnesses to lie on the witness stand in many occasion in a disguise attempt to procure conviction tantamount to fraud. Judge Randall Eng in a open Court said that if the plaintiff trial in the New York State Supreme Court were before Jury that he would consider application for a mistrial due to Queens County District Attorney prosecutorial misconduct in attempting to encourage witnesses to lie. On March 3, 2005, Judge Randall Eng dismissed the wrongful charges of Unlawful Solicitation for grand transportation and Disorderly misconduct against the plaintiff. And wrongfully convicted the plaintiff on the charges of Assault of second degree of a Police Office and resisting arrest. Port Authority Police Officer who claimed to have been injured by the Plaintiff was never at the scene of the plaintiff wrongful arrest on November 06, 2002. Plaintiff did not have any direct personal contact of any nature with Officer George Juez on November 06, 2002. The Witness the State of New York brought from Florida to testify for the People of New York against the Plaintiff, testified that there were no Black Port Authority Police at the scene of the plaintiff arrest on November 06, 2002, and the People witness testified that there were all White Port Authority Police who had contact with the plaintiff on the process of subjecting the plaintiff to racially motivated wrongful arrest on November 06, 2002. The People Witness Mr. Perry Magee testified that he heard the plaintiff shouting that the Six White Males Port Authority Police are killing him and requested for his medication that was in his parked Motor Vehicle in the Parking Lot at Laguardia Airport. Prior to the wrongful arrest, plaintiff was still nursing the pains from the injuries sustained from Motor Vehicle accident of September 19, 2002. Plaintiff disability prevent the plaintiff from

32

running, or moving of his shoulder because he sustained neck, back, shoulder knee and ankle

sprain injuries on September 19, 2002, hence when the Port Authority Police were twisting

plaintiff shoulder, plaintiff started shouting in response to severe pains. Plaintiff did not strike

nor touch anybody on November 6, 2002, and The People Witness Mr. Perry Magee testified to

that facts. Judge Randall Eng, in a open Court hearing asserted that he did not believes that the

plaintiff intentionally injured anybody on November 6, 2002. Plaintiff beliefs that his defense

Counsel has the obligation to put application for mistrial but did not do so. Plaintiff beliefs that

his defense Counsel could have issued a subpoena on the Six White males who actually attacked

and arrested the plaintiff on November 06, 2002, but could not do so because the $9,000.00 the

plaintiff put in escrow with Mr. Stephen Bilkis for the purpose of the trial was not made available

by Mr. Stephen Bilkis to Mr. Steven Zalewski who actually defended the plaintiff. Plaintiff

beliefs that The State of New York procured plaintiff conviction through prosecutorial

misconduct which plaintiff beliefs that tantamount to fraud. Mr. Frank Galchus knew that

plaintiff was attacked by six White males, and was also arrested by six White male, yet when the

plaintiff was brought before Grand Jury, Mr. Frank Galchus did not let the Grand Jury know that

the Port Authority Police who claimed that he was injured on November 6, 2002, by the Plaintiff

during the arrest of the plaintiff was not even at the arrest scene on November 6, 2002, because

the arrest of the plaintiff on November 6, 2002 were done by Six White Male Port Authority

Police men. Plaintiff belief he was denied effective assistance of Counsel. Judge Randall Eng

believes that The State of New York procured conviction of the plaintiff through prosecutorial

misconduct tantamount to fraud, yet, Judge Randall Eng still sentence the plaintiff to confinement

in a disguise attempt to block the plaintiff from pursuing civil litigation against The State of New

York. Plaintiff believes that Judge Randall Eng has a personal interest in the outcome of the plaintiff trial. Judge Randall Eng also said in a open Court hearing that he did not believe that the plaintiff was involved in any intentional misconduct on November 6, 2002. Judge Randall Eng has been given power by the State of New York to exercise justice based on Judge Randall Eng knowledge of the State of New York Laws but in the case of the plaintiff, Plaintiff believes that Judge Randall Eng did not follow the rule of the laws of the State of New York for sending innocent man to confinement knowing that Judge Randall Eng stated from his own mount in a open Court that he believes that the plaintiff did not involved in any intentional misconduct on November 6, 2002. Plaintiff believes that Judge Randall Eng has been involved in the promotion of the practices of moral turpitude which plaintiff believes that tantamount to breach of fiduciary duty, gross negligent in intentional reckless disregard to the plaintiff equal rights to due process. Plaintiff believes that he should be compensated for all the period in confinement in the amount of $1,500.00 for each of the day he was wrongfully sentenced to confinement, and probation. $1,500.00, must be multiply by 5-years as being the compensation demanded against the STATE OF NEW YORK, in accordance to the Appellate Division of the State OF New York.

**54.** On November 26, 2002, Plaintiff was wrongfully arrested in retaliation by Port Authority of New York and New Jersey Police Officers Laurent Ponsolle, and his Partner at JFK International Airport on what plaintiff beliefs to be a joint systematic attempt to sentence the plaintiff to jail without due process based on the episode that took place on November 6, 2002, at La Guardia Airport, as plaintiff became a target of wrongful arrest. Plaintiff has been granted access by the Port Authority of New York and New Jersey on July 15, 2002, to conduct his

34

business of Information and Protection in Tourism and Hospitality via Personal Services. On November 26, 2002, plaintiff was only on his usual business routine at JFK International Airport to received his Africa Organizational Members when he was approached by the Port Authority Police. Police Officer Ponsolle told the plaintiff that Plaintiff was no longer allowed to come to the Airport by AP1 Judge due to November 6, 2002, episode. Plaintiff told the Officer that he was never told by any Judge not to attend to his Africa Organization members, and prospective supporters arriving at the any of the Airport. The Port Authority Officer told the plaintiff that they have been instructed to arrest the plaintiff any time they see the plaintiff at the Airport by Port Authority of New York and New Jersey, and Brian Coggeshall, and JFK International Air Terminal LLC. As the plaintiff was trying to explain to the Officer about what happened on November 6, 2002, a second Officer who was standing behind the plaintiff grabbed the plaintiff both hands backward, twisting the plaintiff injured shoulder, and the plaintiff fell face downward against terminal number four floor. Plaintiff was handcuffed, taken to the JFK Port Authority Police Station, locked-up for eleven hours, and taken to Kew Garden, and locked up in jail, and brought before AP1 Judge, who released the plaintiff on the plaintiff own recognition. Plaintiff believes that he is a victim of wrongful arrest in retaliation because he refused to stop doing his business of Tourism, information, Hospitality and personal services within the Airport, as his customers and Africa Organization arrive through the Airports. Following these arrest, plaintiff have been called a hustler and a terrorist by the Port Authority Police, and by Terminal number four employee. Plaintiff believes that his rights protected by the United States Constitution and laws pursuant to USCA Constitution Amendment 14 section 1, and 42 U.S.C. section 1983 has been violated in disguise under color of State laws by these defendants jointly and separately.

35

Plaintiff demand for equitable reliefs against these defendants.

**55.** On March 3, 2005, Judge Randall Eng told the plaintiff that if the plaintiff is arrested again before sentencing, that he will be very hard on the plaintiff, otherwise, that plaintiff may not serve jail term in the trial which ended on March 3, 2005, and plaintiff was instructed to return to the Court for sentencing by June 20, 2005, for motion to vacate conviction hearing. On May 8, 2005, The Queens County District Attorney knowing that the charges of Unlawful solicitation for grand transportation, and Disorderly misconduct against the plaintiff was dismissed on March 3, 2005, and out of desperation, the Queens County District Attorney attempt force Judge Randall Eng to reinstate the charges already dismissed against the plaintiff but Judge Randall Eng told the Queens County District Attorney that the only way the plaintiff can get jail term if only the plaintiff is re-arrested again before sentencing hearing and motion to vacate conviction hearing. On May 08, 2005, plaintiff Africa Organization members, and supporter arrived at JFK International Airport, and the plaintiff went to pick them up. Plaintiff not knowing that his telephone conversation were being tap by the Queens County District Attorney, Port Authority Police, and Brian Coggeshall of JFK International Air Terminal LLC, plaintiff went to pick up his business Associates arriving from Nigeria at Terminal number four at JFK International Airport. Not knowing that the Queens County District Attorney have instructed Mr. Brian Coggeshall of the JFK International Air Terminal LLC, to contact the Port Authority Police to come and arrest the plaintiff as soon plaintiff arrive at the Terminal Number Four at JFK International Airport. On May 08, 2005, plaintiff was re-arrested at the parking Lot near Terminal number Four at JFK International Airport on the Charges of Unlawful solicitation for grand transportation. Plaintiff was taken to the Port Authority Police Cell, locked-up . While

36

in Cell, plaintiff requested that he be allowed to contact his son, so that his son could help pickup

his business left stranded at the Parking Lot because of his wrongful arrest, and the Police allowed

the plaintiff to fulfil that arrangement. Plaintiff was later taken to Kew Gardens, Booked and

locked up again. Upon appearing before AP1 Judges, plaintiff was released on his own

recognition, but instructed to retain a Counsel, and the plaintiff complied. On about May 20,

2005, plaintiff appeared before Judge Randall Eng, and The Queens County Assistant District

Attorney Michael Whitney told Judge Randall Eng that plaintiff was re-arrested on May 08,

2005, and based on this re-arrest disclosure, Judge Randall Eng decided that he was giving the

plaintiff jail term, and refused to reconsider plaintiff motion to Vacate conviction. Plaintiff paid

Mr. Meir Moza, and Robert Sokolski, the total amount of more than $20,000.00, but both

Attorney refused to comply to Judge Randall Eng order by failing to file a timely motion to

vacate conviction. Plaintiff believes that Queens County District Attorney procured plaintiff

conviction by prosecutorial misconduct which tantamount to fraud by wrongfully re-arresting the

plaintiff on false charges just to gain conviction on May 8, 2005. Plaintiff believes that Mr. Meir

Moza, and Mr. Robert Sokolski extorted money from the plaintiff without filing the motion the

plaintiff had already paid them for. As a result, plaintiff demand equitable reliefs or in the

alternative reliefs against these defendants. Plaintiff demand that Mr. Meir Moza, Mr. Robert

Sokolski, Mr. Frank Galchus, and Mr. Stephen Bilkis refund all the monies they extorted from

the plaintiff.

     56.     On January 31, 2004, plaintiff Motor Vehicle damaged by Mr. Anthony Georgeson

on January 9, 2004, was delivered to Davino's Auto Body, Inc., for repairs. Plaintiff prepaid

Davinos Auto Body, Inc., the amount of $1,049.07, and Davino's Auto Body , Inc., promised to

complete the repair of the plaintiff Motor Vehicle by February 10, 2004. Davino's Auto Body, Inc., could not repair the plaintiff Auto, and the plaintiff took his Motor Vehicle to another shop. Plaintiff has been demanding for the refund of his $1049.07 from Davino's Auto Body,Inc., for more than a year ago but Davino's Auto Body, Inc., have recklessly disregarded the plaintiff demand for his money.  Plaintiff have written several letters to Davino's Auto Body, Inc., in demand for his money but Davino's Auto Body, Inc,. Continue to deny and deprive the plaintiff his money.  The Owner of Davino's Auto Body, Inc., has been threatening the plaintiff by telling the plaintiff that he is an ex-New York City Police Officer, and that he knew all the City Police , and that he can make life hard for the plaintiff.  Plaintiff beliefs that he has been denied and deprived his rights to get his money from Davino's Auto Body, Inc.  As such plaintiff demand for the refund of his money with interest, and with equitable compensation.

38

**IV:    COUNTS III:        JOINT RACIALLY MOTIVATED UNCONSTITUTIONAL JUDICIAL MISCONDUCT TANTAMOUNT TO FRAUD AND MORAL TURPITUDE IN BAD FAITH, GROSS RECKLESS DISREGARDS, INTENTIONAL NEGLIGENCE, BREACH OF FIDUCIARY DUTY, PHYSICAL AND MENTAL CRUELTY WHILE IN CONFINEMENT, AND ATTEMPTED MURDER IN DISGUISE UNDER COLOR OF STATE LAWS BASED UPON THE IDENTIFICATION OF PLAINTIFF NATIONAL ORIGIN-NIGERIA. CLAIMS $10,000000.00 OR IN THE ALTERNATIVE EQUITABLE RELIEFS AGAINST DEFENDANTS, NEW YORK STATE, PORT AUTHORITY OF NEW YORK AND NEW JERSEY, PORT AUTHORITY POLICE OFFICERS GEORGE JUEZ, JORGE ESPINOZA, LAURENT PONSOLLE, FESTA, MORRIS, DETECTIVE DALTON, NEW YORK AIRPORT BUS SERVICE, NASSAU COUNTY POLICE OFFICER ANTHONY ZURICK, NASSAU COUNTY ATTORNEY, ANTHONY GEORGESON, JUDGE RANDALL ENG, QUEENS COUNTY DISTRICT ATTORNEY, QUEENS COUNTY ASSISTANT DISTRICT ATTORNEY MICHAEL WHITNEY, BRIAN COGGESHALL, JFK INTERNATIONAL AIR TERMINAL LLC, USMAN PASHA, BECKMAN COULTER,INC., LT WHEEL, NEW YORK CITY CORRECTIONAL DEPARTMENT, COMMISSIONER MARTIN HORN, MEIR MOZA ESQ, ROBERT SOKOLSKI ESQ, STEPHEN BILKIS ESQ, FRANK GALCHUS ESQ, AND DAVINO'S AUTO BODY, INC, HERTZ CORPORATION, FOR PARTICIPATING IN A JOINT SYSTEMATIC VIOLATIONS OF USCA CONSTITUTIONS AMENDMENT 14 SECTION 1, AND 42 U.S.C. SECTIONS 1983 UPON THE IDENTIFICATION OF THE PLAINTIFF NATIONAL ORIGIN INDUCED BY RACIALLY MOTIVATED STEREOTYPE AND THE PLAINTIFF CLAIMS STATES AS FOLLOWS:**

57.    Plaintiff incorporates the pleading on Count I, and Counts II, into this paragraphs number-fifty-six of Counts III, as if it is pleaded here.

58.    In about February 28, 2005, and thereafter, Judge Randall Eng stated in a open Court hearing that he would have consider defense application for mistrial of wrongful indictment No. 3719-02 trial based upon the discovery of the Queens County Assistant District Attorney Michael Whitney involvement in Prosecutorial misconduct by attempting to procure plaintiff conviction by fraud for encouraging witnesses to lie on the witness stand. On about March 3,

2005, and thereafter, Judge Randall Eng made a statement in a open Court that he did not believes that plaintiff did anything intentional to injure anybody. On March 3, 2005, Judge Randall Eng dismissed the charges of Unlawful solicitation for grand transportation and Disorderly misconduct falsely filed against the plaintiff by Port Authority of New Jersey Police Officers. On March 3, 2005, Queens County District Attorney wanted Judge Randall Eng to reinstates the charges already dismissed against the plaintiff, in an attempt to deny and deprive the plaintiff rights to pursue civil litigation against the State of New York for false arrest. On March 3, 2005, Judge Randall Eng assured the Queens County District Attorney that if the plaintiff is re-arrested again that plaintiff will face a tougher sentence. On May 8, 2005, Queens County District Attorney contacted Mr. Brian Coggeshall of the JFK International Air Terminal LCC, to call the Port Authority Policeto arrest the plaintiff should the plaintiff appear at Terminal number four of the JFK International Airport, with the agreement that Judge Randall Eng have promised to sentence the plaintiff to confinement if plaintiff is re-arrested. On May 8, 2005, plaintiff was wrongfully re-arrested by Port Authority Police on false charges of unlawful solicitation for grand transportation, in a retaliatory attempt to reinstates charges that has been dismissed on March 3, 2005, against the plaintiff. Based on the re-arrest of the plaintiff, Judge Randall Eng sentence the plaintiff to confinement on July 7, 2005, in violations of due process, and equal protection pursuant to USCA Constitution Amendment 14 section 1, and 42 U.S.C. Section 1983. Plaintiff believes that the conduct of Judge Randall Eng, and the Queens District Attorney, and The Port Authority of New York and New Jersey tantamount to fraud, as a result plaintiff sentencing proceedings are unconstitutional, tantamount to moral turpitude, and breach of fiduciary duty based upon the identification of the plaintiff national origin. While plaintiff was

40

in confinement, he was placed in room having a temperature over 106 degree. As a result of the heat, plaintiff almost suffered stroke, and plaintiff developed severe headache. At plaintiff transferred from th high temperature room, he was placed inside a room consisting of male prostitutes, who smoke cigarette and other types of drugs day and nights. Plaintiff was made to inhale second hand smoking, causing the plaintiff chest pains, and burning eyes for all the period of confinement. Plaintiff believes that New York City Department of Correction, and Commissioner Martin Horn has the power to stop illegal drugs and cigarette from coming into the correctional facility but in reckless disregard, in gross negligent failed to made correction to the inflow of illegal drugs and cigarette into the New York City Department of Correction facilities. Plaintiff demand equitable reliefs or in the alternative reliefs against New York City Department of Correction and Commissioner Martin Horn for violations of fiduciary duty, and gross reckless disregard of the plaintiff safety for allowing inflow of illegal drugs and cigarette into the correctional facility.

59.    On April 17, 2005, plaintiff was attacked by New York Airport Bus Service Employee, and the plaintiff prior head injuries of February 5, 2005, robbery attacks injuries were aggravated, and plaintiff continue to suffer periodic recurring memory loss. As a result of the injuries, plaintiff is having difficulties conducting his private businesses. Upon investigation, plaintiff was made to believes that New York Airport Bus Service Employee attacked the plaintiff on April 17, 2005, because the New York Airport Bus Employee was told that plaintiff is a terrorist and is a hustler. Plaintiff believes that he has been a victim of attempted murder on January 11, 2001, September 19, 2002, November 6, 2002, November 26, 2002, February 5, 2005, April 17, 2005,  June 16, 2005, and July 7, 2005, at the influence the Port Authority of

41

New York and New Jersey Police, The State of New York, Nassau County Attorney, Queens County District Attorney jointly in retaliation because the plaintiff exercise his constitutional rights in pursues of happiness by developing his private businesses. Plaintiff believes that the State of New York and Queens County District Attorney joint in disguise under color of State laws to abusively misused the Port Authority Police to cause the plaintiff injuries.

60.      Plaintiff believes that Mr. Usman Pasha reckless operation of LT Wheel and Beckman Coulter, Inc., Motor Vehicle on June 16, 2005, contributed to the Motor Vehicle collision causing damages to the plaintiff Vehicle, and denying and depriving the plaintiff rights to see his legal Counsel on June 16, 2005, resulting to untimely confinement of the plaintiff on July 7, 2005, for Mr. Meir Moza, and Mr. Robert Sokolski failure to file a timely motion ordered by Judge Randall Eng on June 22, 2005. Plaintiff believes that because Mr. Stephen Bilkis failure to make the $9,500.00 of plaintiff monies available for Mr. Steven Zalewski to enable him issue subpoena on the Six White Male Port Authority Police who attacked the plaintiff on November 6, 2002, and subjected the plaintiff to wrongful arrest, hence Mr. Steven Zalewski could not provide the plaintiff effective legal defense. Plaintiff believes that Mr. Meir Moza, Mr. Robert Sokolski, Mr. Frank Galchus, and Mr. Stephen Bilkis knew or should known that Police Officer George Juez was not at the scene of the plaintiff arrest on November 6, 2002, and they knew or should have known based on the disclosure that he was attacked by six White men, but plaintiff Defense Counsel failed to call these to the attention of Judge Randall Eng. Judge Randall Eng and the Queens County District Attorney knew or should have known that plaintiff did not assault Port Authority Police Officer George Juez because Juez never have physical or personal contact with the plaintiff before nor on November 6, 2002. Plaintiff believes that he was sentence

42

to confinement and probation based upon the identification of his national origin-NIGERIA.

PLAINTIFF BELIEVES THAT HIS RIGHTS PROTECTED BY THE United States

Constitution Amendment 14 section 1, and 42 U.S.C Sections 1983, has been systematically

violated in disguise under color of State laws. Plaintiff demand for equitable compensation

against these defendants or in the alternative reliefs.

## TRIAL BY JURY DEMAND

61.    Plaintiff demand trial by Jury.

## RELIEFS SOUGHT

62.    Plaintiff pray, and demand for equitable reliefs or in the alternative in the amount

of $50,000000.00 (Six Millions U.S. Dollars) against all the defendants as pleaded above.

## CONCLUSION

63.    I, AROR ARK O'DIAH, plaintiff in this instant civil action declares under penalty

of perjury under the laws of THE MOST HIGH GOD, and of the United States of America that

the above statements, and the attached exhibits are true and correct to the best of plaintiff

knowledge and recollection.

EXECUTED ON SEPTEMBER 16, 2005, IN JAMAICA, QUEENS, NEW YORK.

Respectfully Submitted by: _____

Aror A. O'Diah, Pro se plaintiff
177-17 South Conduit Avenue #1H
Jamaica, NY 11434
(718) 978-9580 or (516) 361-0045

Sworn to before me on this 16,
day, in the month of September,
Year, 2005

_____
NOTARY PUBLIC.

SHOAIB SULTAN
Notary Public,state Of New York
N0.01SU6086777
Qualified In Queens County
Commission Expires February 3, 2007

43

# PLAINTIFF POINTS OF AUTHORITY IN SUPPORT OF THIS INSTANT CLAIMS, SEE EXHIBIT #1 a (One page), ATTACHED.

# Pain may pay for a jailed dad

## ⊛ EXCLUSIVE

**BY SCOTT SHIFREL**
DAILY NEWS STAFF WRITER

A FORMER BOOK editor who spent more than two years in prison after he was wrongly convicted of raping his 4-year-old daughter may now be entitled to big payday from the state.

Amin Baba-Ali may win financial damages, but he said he would be glad to trade it all to be able to see his daughter again.

"It could be millions of dollars, but nothing is going to replace what I've been through, what I lost," he told the Daily News after an Appellate Division panel ruled last week that the state is liable for damages. "My life has been hell. I had a good career, I had a good daughter.

"Now I'm 49 years old and I'm starting over. I have no idea where she is. Hopefully, she reads the Daily News and she will want to get in touch."

Baba-Ali's tale started at the end of a nasty custody dispute with his ex-wife, who accused him of abusing their daughter in 1988. He was tried and convicted and spent nearly three years in prison.

The inmates somehow find out about your crime and the Algerian-born Baba-Ali, who claims he was beaten up badly while in custody. "Being a convicted child molester, you either survive or die."

But in 1992, a state appellate court ordered a new trial, blasting prosecutors for waiting until the eve of the trial before turning over critical information that could have cleared Baba-Ali. It also blamed his lawyer for not subpoenaing two doctors who had examined the girl and found no abuse.

The Queens district attorney's office dropped the charges, and Baba-Ali was left to put his life back together. But that three-year gap in his résumé has kept him from getting a decent job, he said.

Baba-Ali filed claims against the city, but a jury found against him. He appealed that suit while the claim against the state went forward.

Last Tuesday, the Appellate panel court ruled that because the conviction "was procured by prosecutorial misconduct tantamount to fraud," the only thing left to decide was how much Baba-Ali should get.

The state is considering an appeal, a spokesman for the attorney general's office said.

Meanwhile, Baba-Ali said he's still "numb" from the ordeal.

"It was 1987 when I last saw my kid," he said. "She would be 22 this year. It's mind-boggling how an entity like a government or a prosecutor can take somebody, take this away. I have no idea."

sshifrel@nydailynews.com

13

EXHIBITS#1a (AUTHORITY IN SUPPORT OF CLAIMS)

# PLAINTIFF 2nd POINTS OF AUTHORITY IN SUPPORT OF THIS INSTANT CLAIMS, SEE EXHIBIT #1b (One page), ATTACHED.

# Mistrial looms in Biggie case

### BY MICHELLE CARUSO
DAILY NEWS WEST COAST BUREAU CHIEF

LOS ANGELES — An LAPD detective allegedly hid records for years that fingered two crooked cops in Notorious B.I.G.'s slaying, lawyers for the rapper's family revealed yesterday.

The stunning development delayed the family's wrongful death suit against the city of Los Angeles until tomorrow and could result in a mistrial.

A secret file and two tapes — in which a prison snitch says crooked cop Rafael Perez confessed he and rogue officer David Mack helped set up B.I.G.'s 1997 murder — were stashed in a detective's "middle desk drawer," family lawyer Perry Sanders Jr. said.

City lawyer Vincent Marella said Detective Steven Katz "just forgot they were in there" until about 12 days ago when he began preparing to testify.

But Judge Florence-Marie Cooper, who has repeatedly ordered cops to turn over all investigative files concerning the slaying of the rapper, also known as Biggie Smalls, didn't buy it.

"The notion that Katz forgot about the file is incredible to the court. It defies credulity. I do not believe it," the judge said.

She will decide tomorrow what to do about the alleged police misconduct.

The family's lawyers want her either to declare a "default judgment," in which she would find the city responsible for Biggie's slaying and advance the trial to the monetary damages phase, or a declare a mistrial. The city wants the trial to go forward as if nothing happened.

The lawyers for Biggie's family contend that Mack, who was then an LAPD cop, conspired with the rapper's bitter rivals at L.A. based Death Row Records to have him killed in retaliation for the earlier murder of Tupac Shakur, who had been Death Row's star.

mcaruso@nydailynews.com

EXHIBIT#1b(AUTHORITY IN SUPPORT OF SUIT)